(Decided June 3rd 1864.)

---

CATHARINE ALTHER *vs.* BENJAMIN C. BARROLL AND OTHERS.

DEVISEE OR LANDS IN FEE CHARGED WITH PAYMENT OF DEBTS AND LEGACIES,— POWER OF TO SELL: APPLICATION OF PURCHASE MONEY.—A devisee having the legal estate in fee under a will, charged with the payment of all the testator's debts, and also with the payment of the legacies under the will, has

full power to sell; and purchasers from such devisee are not bound to see to the application of the purchase money as to creditors.

Where the primary charge on the land is the payment of *all* the testator's debts, and there is a further provision in the will requiring the devisee aforesaid, who was also executor,—"to find a home for his sisters during their single lives;"—the latter provision being voluntary, and postponed to the rights of creditors, if there was no obligation on the purchasers to see to the application of the funds as to creditors, there could be none in favor of those whose rights were thus postponed.

ACT OF 1831, CH. 315.—A sale made by the devisee aforesaid, under the facts above stated, is not subject to the provisions of the Act of 1831, ch. 315,—that Act being strictly confined to sales made by executors authorized to sell.

APPEAL from the Equity side of the Circuit Court for Baltimore County.

The bill of complaint in this case was filed by the appellant against the appellees on the 27th of July 1858. The material allegations of the bill, the terms of the will involved in the matters in controversy, and the facts of the case, sufficiently appear from the opinion of this Court. The Court below, (PRICE, J.,) dismissed the bill of complaint, and the complainant appealed.

The cause was argued before BOWIE, C. J., and GOLDSBOROUGH, COCHRAN, and WEISEL, J.

*Bernard Carter* and *E. Beatty Graff,* for the appellants, argued:

1st. That the land devised (145 acres) to William Alther, was charged as aforesaid, by the will, and that the home was to be found upon the particular land or farm so devised. That the said devise was made to William Alther upon condition that he should comply with all of the requirements and commands set forth in said will, before his title became vested in the land. *Tolson vs. Tolson,* 10 *G. & J.,* 159. *Hutchins vs. Hutchins,* 3 *Md. Ch. Dec.,* 356. *Mitchell vs. Mitchell,* 3 *Md. Ch. Dec.,* 71. *Willett vs. Carroll,* 13 *Md. Rep.,* 459; and decisions

therein referred to as to the charge for a "home;" and as to the devise upon condition, see *Rebecca Owings' case,* 1 *Bland,* 390. *Messenger vs. Andrews,* 4 *Russell,* 478, *in 3rd Cond. E. C. R.,* from November 1825 to May 1828. *Inglis vs. The Trustees, &c.,* 3 *Peters,* 119. *Gibson vs. McCormick,* 10 *G. & J.,* 65–105. *Maryland & N. York Coal, &c., vs. Wingate,* 8 *Gill,* 170. *Thompson vs. Blair,* 3 *Murf.,* 583. *Johnson vs. Thweatt,* 18 *Alabama,* 741. *Graves vs. Graves,* 1 *A. K. Marshall,* 165. *Murray vs. Ballou,* 1 *Johns- Chy.,* 575. *Smith vs. Ravenel,* 1 *McCord, Chy.,* 149. *Watkins vs. Cheek,* 2 *Sim. & Stewart,* 199, 1 *Cond. E. C. R.,* 416. *Yoder vs. Swope,* 3 *Bibb,* 204. *Armstrong vs. Carson's Ex.,* 2 *Dall.,* 302. *Taylor vs. Sutton,* 15 *Georgia,* 103. *Collins vs. Carman,* 5 *Md. Rep.,* 503. *Dolan & Foy vs. M. & C. C. B.,* 4 *Gill,* 394. *Hogeboom vs. Hall,* 24 *Wend.,* 146. *Williamson vs. Morton,* 2 *Md. Ch. Dec.,* 94.

2nd. That the whole of said land (145 acres,) was, from the death of testator, on 11th July 1846, bound for, and charged with, the "home" for Ann, and that said land yet continues to be bound for, and is charged with her home, during her future single life, no matter who became the purchasers of said land from William Alther, provided William failed or neglected to comply with the requirements and conditions of said will, previous to his selling said land. That Ann claims the full yearly money value and interest of said home, in all the land, from 11th July 1846, and during her future single life.

3rd. That the whole of said land, (145 acres,) was, from the death of the testator, on the 11th July 1846, up to 1st April 1851, bound for, and charged with, the "home" for Catharine, and with her legacy of $50, and interest, and that from the 1st of April 1851, (on which day Catharine released her claim to fifty-five acres of said 145 acres, to Jacob Wisner, leaving ninety acres still charged,) ninety acres of said land, owned by appellees

Boyce, Lee and Debach, is yet charged, and bound for its proportional part of the yearly money value, with interest, of said home and for said legacy and interest.

That the whole 145 acres referred to, is charged and bound to pay the full yearly value of said home, with interest, from 11th July 1846, to 1st April 1851, and that the ninety acres of said land referred to, is yet charged and bound to pay a proportional part of the yearly money value of said home during her future single life, no matter who became the purchasers from William Alther, of said ninety acres, provided William failed or neglected to provide the home as commanded by said will; that said land is charged and bound in like manner for the legacy and interest. As to the charge for the legacy, see *Mitchell vs. Mitchell*, 3 *Md. Ch. Dec.*, 71. *West vs. Biscoe*, 6 *H. & J.*, 460. *Kemp vs. McPherson*, 7 *H. & J.*, 320. *Luckett vs. White*, 10 *G. & J.*, 480. *Spencer vs. Robins*, 6 *G. & J.*, 507. *Crawford vs. Severson*, 5 *Gill*, 443. *Spencer vs. Spencer*, 4 *Md. Ch. Dec.*, 456. *Usilton vs. Usilton*, 3 *Md. Ch. Dec.*, 36. *Hutchins vs. Hutchins*, 3 *Md. Ch. Dec.*, 356. *Hogeboom vs. Hall*, 24 *Wend.*, 146. *Duffy vs. Calvert*, 6 *Gill*, 488.

4th. That the order of the Circuit Court, dismissing the bill ought to be reversed, and that the opinion of said Court alleging that the devise to William Alther was in trust to pay debts, and that purchasers from William "were not bound to see to the application of the purchase money," decides a question that does not arise in, or apply to, the present case, because the devise to William was upon condition, and not in trust or with power to sell to pay debts, &c. The commands to William to find the home, were emphatic, he "must find." The "home" was specified and designated by the testator; it was to be "on the farm they now live upon," that is, on the land or farm devised to William, and which William sold to the appellees before his title or right became vested. The appel-

lees therefore, bought the land, subject to the charge, and the rule *caveat emptor* applied to them.

That as William Alther had only a contingent claim to the land, or a claim subject to the charge created upon it by the will; his purchasers could acquire no better claim or title to it than William had, until the conditions of the will were complied with, or the charge or claim of the appellants were released by them.

That purchasers from William purchased from him in the same manner that any purchase of land is made, upon which there is a judgment, mortgage, or decree, viz: and of any incumbrance on it, or take the risk of its being subject to it, and a purchaser is bound to know of his title, liable for claims. See *Rebecca Owings' case*, 1 *Bland*, 390, and authorities referred to before under this case.

That William Alther voluntarily sold this land as absolute owner, and not as trustee or executor, or in pursuance of any power or authority given him by the will, or by a Court of Equity. 1831, ch. 315, sec. 10. *Dent vs. Maddox*, 4 *Md. Rep.*, 530. *Harlan vs. Brown*, 2 *Gill*, 475–479. 1843, ch. 304, sec. 1.

That all the commands in the will are to be strictly, literally, and punctually performed before William Alther can acquire a vested title to the land.

That the requirements and commands contained in the will, are conditions which run with the land, and are continuing charges upon it; they are incumbrances which follow the land in the hands of every owner, unless the land is sold by process from a Court of Equity, or by express authority in the will. See authorities under first point, and in reply to appellees' defences, as shown by the record.

5th. That William Alther never did find the home for either Catharine or Ann, nor did he pay Catharine's legacy of $50.

Alther *vs.* Barroll et al.

That the alleged *parol* release of the appellant's claim under said will, on 1st April 1851, never was made by them, and if they had promised by *parol* to release it, the promise was not binding under the statute of frauds, and the law, for want of consideration, and for not being in writing.

6th. That Catharine's legacy was never paid to her, and that the copy of the account which passed the Orphans' Court, in which said legacy is alleged to have been paid, and which was at one time, *prima facie* evidence of said payment, has been rebutted by positive testimony of non-payment, and it is not now to be taken as *prima facie* evidence of payment.

7th. That Jacob Wisner is one of the appellees, and is a party defendant in the Record; he was improperly examined as a witness for the appellees. That he has a positive, defined and direct interest in the land in controversy, and that his testimony is inadmissible.

8th. That two bills of complaint were properly filed, because the claim of each appellant is in severalty, and is separate and distinct. The two claims are unequal, and the claim of each is different in character and amounts; the cases ought not to be consolidated and made one.

9th. That the greater part of the appellees' testimony is illegal, irrelevant, and inadmissible, as will appear by the testimony.

*Benjamin C. Barroll* and *R. R. Boarman*, for the appellees—Lee, Debach and Wisner.

I. William Alther was clothed with the legal title. The sales were necessary for the payment of the debts of the testator, which it was his primary duty to discharge, and neither in the sales, nor in the application which he made of the purchase money, was he in any respect guilty of a breach of trust. The trust for the benefit of

64      v. 22.

the complainants, which, giving it the fullest effect, was equivalent to a charge of an annuity, (*Willett vs. Carroll,* 13 *Md. Rep.*, 459,) was subject to the prior charge of debts and specific legacies. Had it been otherwise enforceable against a purchaser, the conduct of the complainants in promoting and uniting in the sales, and accepting the benefit thereof, would equitably estop them from following the land thus *bona fide* purchased and paid for. 2 *Spence's Eq.*, 369, (*Brev. note.*)

II. But purchasers from William Alther were exonerated from all obligation to see to the application of the purchase money, by a general principle of equity, upon the provisions of the will, irrespective of all question of the necessity of the sale, the existence of debts, or the manner in which the trust for the benefit of the appellants was to be performed. That principle is, that where a testator charges an estate with debts generally, and then makes specific dispositions or charges, the purchaser is not bound to look to the application of the money. The burden of seeing to the payment of all the debts of a man, is never imposed on a purchaser, because he cannot be expected to know what debts exist, or what their amount will prove to be; and inasmuch as the uncertainty as to the amount of debts necessarily renders it uncertain what surplus, if any, will remain, the purchaser is relieved from all duty of inquiring further than the legal right of the executor or devisee to sell. Consequently, wherever both debts and legacies are charged, the receipt of the executor or trustee is all that is needed. *Page vs. Adams,* 4 *Beav.*, 269. *Forbes vs. Peacock,* 1 *Phil. R.*, 717. *Stroughill vs. Anstey,* 1 *De. G. Mac. & Gord.*, 635; 12 *English Law and Equity*, 356, where the subject is thoroughly discussed by Lord St. Leonards. *Ball vs. Harris,* 4 *Mylne & Craig,* 164. *Potter vs. Gardner,* 12 *Wh.*, 498. *Lewin on Trusts,* 3rd ed., 434–44. 2 *Story's Eq.*

*Jur.*, secs. 1127, 1127*a*, 1131, 1132, 1132*a*. 2 *Spence's Eq.*, 380, 381.

III. In this case, the union in William Alther of the character of devisee and executor, excludes all possible question. *Lew. on Trusts*, 443, 444. 1 *Wh. & Tud. L. C.*, 72 to 77, *marg.*

As to the powers of executors under all circumstances to sell and convey, see 1 *Wms. on Exec'rs*, 549, 550, 551. *Ex parte Turner*, 9 *Mod. Rep.*, 418.

*T. Parkin Scott*, for the appellee, Boyce, argued:

I. That if a lien was given by the will, which is denied, it was only on the equity of redemption of the testator, and subject to the prior liens of the creditors of the testator.

II. That the lands devised were liable to be sold for the payment of the debts of the testator,—he at the time of his death having been insolvent as to his personal estate; and that William Alther being devisee and executor, charged with the payment of the debts, took authority under the will, by implication, to sell for that object.

III. That where an executor is authorized to sell to pay debts and legacies, the land is by such sale discharged of any intended lien in favor of legatees, and the purchaser is not bound to look to the application of the purchase money. *Potter vs. Gardner*, 12 *Wheat.*, 498. *Story's Eq. Jur.*, sec. 1127*a*.

IV. But if we are wrong in the second and third points, which we cannot admit, yet it is in proof, that the complainant had knowledge of the intended sales, before they were made, and consented to and approved of said sales, and thereby waived their lien, if any existed under the will.

V. That with the surplus sales, after paying the debts of the testator, a new home, selected by themselves, was bought by the said William Alther, and they accepted it,

went into possession, and have ever since continued in possession thereof.

VI. The pecuniary legacies are not charged on the real estate: but if so, it is in proof that the pecuniary legacies were paid. *Simmons vs. Drury*, 2 *G. & J.*, 32. *Dugan vs. Hollins*, 11 *Md. Rep.*, 77.

VII. It is conceded that there is some conflict in the testimony, as to the consent of the complainants to the sale, and to their acceptance of the new home on the York road. The mother swears for the daughters and they swear for each other; but the weight of the testimony against the complainants is overwhelming. It is submitted that the decree dismissing the bill be affirmed with costs.

GOLDSBOROUGH, J., delivered the opinion of this Court.

Jacob Alther, late of Baltimore County, deceased, died in July 1846, seized and possessed of a tract of land in said county, containing 145 acres, leaving a last will and testament, by which he bequeathed to the appellant a legacy of $50, and left other moneyed legacies to parties named in his will. The testator further provided as follows: "I give and devise unto my son, William Alther, all my estate, both real and personal, my sword and pistol, to him and his heirs forever, who is to pay all my just debts, and all the foregoing named legacies, and must find his mother, Ann Alther, a comfortable living on the farm they now live upon, during her single life, and also to find a home for his sisters during their single life; and also William Alther has to give to his mother one third of the produce on the farm during her single life, after my death."

William, the devisee, was also appointed sole executor. As devisee, he took possession of the tract of land devised to him, and between the years 1848 and 1851, sold the same in parcels to the appellees. In the deeds conveying

the land, William Alther and wife, and Ann Alther, the mother, united as grantors. The appellant united in the deed to Jacob Wisner, for the remaining fifty-five acres.

At the time of the death of Jacob Alther, the testator, the appellant lived with her mother and William Alther, on the farm devised to him; and she alleges in her bill of complaint, that soon after her father's death, her brother refused to allow her to remain on the farm, or have a home thereon, although by the provisions of the will, he was required to find a home for her during her single life. She therefore charges that though the land devised, has been sold, her right to have a home, is a charge upon the land, and the present owners thereof, are bound to see to the application of the funds arising from the sale, so that the provisions of the will in her behalf, may be gratified.

As the purchasers of this tract of land are the only defendants, we think this case may be disposed of by a determination of the two following questions: 1st. Had William Alther the legal right to sell and convey the land as devisee under his father's will?   2nd. Were the purchasers bound to see to the application of the purchase money, so that all the provisions of the will should be gratified?

We entertain no doubt that William Alther, as devisee, having the legal estate in fee, and under the will, had full power to sell, especially as he took the estate subject to and charged with the payment of all the testator's debts, and also the legacies named in the will.   See *Lewin on Trusts*, 380, 381, 382 and 383.

We are equally decided in opinion, that the purchasers were not bound to see to the application of the purchase money.   The primary charge on the land is for the payment of all the testator's debts.   The purchasers had access to the will, and finding such a provision, it was

not incumbent on them to ascertain who were the creditors of Jacob Alther, and what was the amount of their respective claims; this was a matter of trust involving long accounts, requiring the production of vouchers, which the purchasers would have no right to require. See *Lewin on Trusts*, 376, and the cases there cited. In *Johnson vs. Kennett*, 6 *Simons*, 384, it is expressly directed that: "Where debts are charged generally or when debts and legacies are charged generally, the purchasers of real estate are not bound to see to the application of the purchase money." See also *Potter vs. Gardner*, 12 *Wheaton*, 502. *Eng. Ch. R.*, 206, note. We think it follows as a necessary consequence, that as the debts are a primary charge, whatever rights the appellant had under her father's will, being voluntary and postponed to the rights of creditors, if there was no obligation on the purchasers to see to the application of the funds, as to creditors, there could be none in favor of those whose rights were thus postponed.

We think the point made by the appellant's counsel, that the sales made by William Alther are subject to the the provisions of the Act of 1831, ch. 315, is not tenable. This Act is strictly confined to sales made by executors authorized to sell. In this case, William Alther is both devisee and executor. No power of sale was conferred on him as executor; on the contrary, the legal title was given to him as devisee, and he was expressly charged to pay the debts of the testator. He took the trust coupled with an interest, whereas the power to sell real estate conferred on an executor, is a naked trust, for the fulfilment of which he is subject to the control of the Orphans' Court, under the provisions of the Act of 1831.

*Decree affirmed,*
*with costs to Appellees.*

(Decided February 3rd 1865.)